UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

RESETARITS CONSTRUCTION
CORPORATION,

                              Plaintiff,

        v.                                                      **DECISION AND ORDER**

                                                                19-CV-1258S

E & N CONSTRUCTION, INC. and
ELIO FERREIRA,

                              Defendants.

═══════════════════════════════════

## I.      Introduction

        Before this Court is a contract dispute arising from a construction Master

Subcontract for a project in New Jersey.  Defendants (a New Jersey subcontractor and

its principal) removed this case to this Court (Docket No. 1, Notice of Removal).  Plaintiff

Resetarits Construction Corporation (or "RCC") is a New York corporation and contractor

on the New Jersey project, while Defendant E&N Construction ("E&N") is a New Jersey

corporation (id. ¶¶ 7, 8, Ex. A, State Compl.) that performed work in the project.  In his

declaration in support of the Motion to Dismiss, Defendant Elio Ferreira states that he is

a citizen of New Jersey (Docket No. 3, Decl. of Elio Ferreira ¶ 6; see also Docket No. 1,

Notice of Removal ¶ 8 (Ferreira not a citizen of New York).

        This Decision and Order considers (a) Defendants' Motion to Dismiss (Docket

No. 3) and (b) Plaintiff's Cross-Motion to Remand and for other, alternative relief (Docket

No. 5).

        For the reasons stated herein, Plaintiff's Cross-Motion to Remand (Docket No. 5)

is denied.  Defendants' Motion to Dismiss (Docket No. 3) for lack of personal jurisdiction

over Defendant Elio Ferreira is granted and their Motion to Dismiss (id.) Defendant E&N Construction, Inc., is granted.   Plaintiff's alternative motion for limited jurisdictional discovery (Docket No. 5) is denied and its motion (id.) for leave to amend the state Complaint as proffered is denied.

## II.   Background

### A.  Removal

Defendants removed this case from New York State Supreme Court, Erie County (Docket No. 1, Notice of Removal), asserting federal jurisdiction based on diversity jurisdiction (id. ¶¶ 7, 8, 4).  In its Complaint, RCC alleges that RCC and E&N entered into a master subcontract ("Master Subcontract") for construction of the Carrino Plaza Apartments in New Jersey (id., Ex. A, Compl. ¶ 6; see Docket No. 5, Decl. of David Resetarits [First], Ex. 1, Master Subcontract E&N Construction and Resetarits Construction Corporation).  E&N denies this (Docket No. 7, Decl. of Shawn Roney ¶¶ 9, 12).

RCC alleges E&N breached the Master Subcontract by failing to secure labor and material bonds, performance bonds, and appropriate insurance; refusing to bill in a form acceptable to RCC, not paying required wages and benefits; and other breaches[1] (id. ¶ 7).  To the extent E&N did not pay, RCC claims that E&N's principal owner Defendant Ferreira was personally responsible for the unpaid wages and benefits (id. ¶ 8).   In addition to claiming damages from the breach, RCC also seeks to recover its attorneys' fees, costs, and interest under Article 5.6 of the Master Subcontract (id. ¶¶ 9, 10).

---

[1]See Docket No. 5, Resetarits [First] Decl., Ex. 1, Master Subcontract E&N Construction and Resetarits Construction Corporation, arts. 14, 7, 4.2.

B.  Master Subcontract

Article 20.4 of the Master Subcontract allows RCC to enforce its terms and provides that "Any such action and all actions by either party hereto, shall be venued and heard exclusively in Supreme Court, Erie County, New York" (Docket No. 5, Resetarits [First] Decl., Ex. 1, art. 20.4).  Article 2.2 calls for Work Orders that RCC issues to the subcontractor and "upon acceptance, a subcontract for that portion of the work shall exist between Resetarits and the Subcontractor for such Project, and containing all of the terms and conditions of this Master Subcontract and the provisions of the Work Order" (id.). The Master Subcontract contains an entire agreement provision which made the Master Subcontract, its attachments (including Work Orders, see id., art. 2.2), contract documents referred therein the "sole agreement between the parties hereto" (id., art. 16).

The Master Subcontract submitted in this case is unsigned by both parties (id., at page 15).  RCC's Work Order (Docket No. 5, Ex. 3), however, was signed by both parties; senior project manager Thomas Wheeler[2] signed for RCC and Shawn Roney signed for E&N (id.).  While the Work Order (Docket No. 5, Resetarits [First] Decl., Ex. 3; see also Docket No. 8, Resetarits Second Decl., Ex. 1) specified the scope of work, it does not contain a reference to the Master Subcontract or a forum selection clause.  The Work Order does provide that E&N was to pay prevailing wages (id., at first to second pages) but did not require E&N to have requisite bonding and insurance or required procedures for payment.

At issue here is the breach of this Master Subcontract (Docket No. 5, Decl. of David Resetarits [First], Ex. 1).  This agreement (as RCC argues) is the asserted basis for

---

[2]E&N contend it negotiated with a "Thomas Vitiello."  The signature on the Work Order, Docket No. 5, Ex. 3, appears as "Vitiello" although the printed last name below the signature is "Wheeler."

personal jurisdiction over Defendants from their execution of the agreement containing a forum selection clause. The forum selection clause is also the reason RCC now seeks to remand this action to the New York State Supreme Court, Erie County.

David Resetarits, the president and owner of RCC (Docket No. 5, Resetarits [First] Decl. ¶ 1), represents that RCC never enters into a Work Order without the subcontractor first agreeing to a Master Subcontract (Docket No. 5, Resetarits [First] Decl. ¶¶ 8, 10 (practice of RCC to require subcontractors to agree to Master Subcontract before issuance of any Work Order); Docket No. 8, David Resetarits Decl. Second ¶ 15). The Master Subcontract here had the parties "agree that the terms of this Master Subcontract shall be deemed expressly incorporated by reference into each Work Order" (Docket No. 5, Resetarits [First] Decl. ¶ 14, Ex. 1, at 1).

RCC sent the Master Subcontract to E&N for execution (Docket No. 5, Resetarits [First] Decl. ¶ 7, Ex. 1) but RCC later could not find that agreement (id. ¶ 11), concluding that E&N still had it (id. ¶ 12). RCC argues that after E&N agreed upon the Master Subcontract RCC then sent the Work Order to E&N (id. ¶ 13, Ex. 3).

Shawn Roney for E&N contends that the parties agreed to forego the Master Subcontract and to have E&N perform under a negotiated Work Order (Docket No. 7, Decl. of Shawn Roney ¶¶ 8-9, 13; Docket No. 8, Resetarits Second Decl. ¶ 6). E&N consistently rejected provisions that require it to litigate outside of New Jersey (Docket No. 7, Roney Decl. ¶¶ 7, 10-11). Roney claims he negotiated with Tom Vitiello whom Roney contends represented Plaintiff with another unnamed person (id. ¶ 9). E&N did not return a signed Master Subcontract because it rejected various terms in it, as E&N claims it communicated to Vitiello (id. ¶¶ 9, 10-12). Roney argues that Vitiello was "well

4

aware that E&N rejected the terms of the proposed Master Subcontract" and that Vitiello and E&N agreed to work from the Work Order only (id. ¶ 13).  E&N proceeded with the New Jersey project "without agreeing to any of the terms in the proposed Master Subcontract form" (id. ¶ 14).

Vitiello states, however, he never worked for RCC (he was employed instead by Sphere Construction) and claims he never negotiated with Roney or E&N regarding RCC's Master Subcontract with E&N (Docket No. 11, Thomas Vitiello Decl. ¶¶ 5-6, 7-8, 9-11).  Sphere's role in this construction or negotiations (if any) is not stated in this record.

David Resetarits agreed that Vitiello was not employed by or an agent of RCC (Docket No. 8, Resetarits Second Decl. ¶ 9).  Resetarits did not give authority to Vitiello to negotiate the Master Subcontract with E&N (id. ¶ 11; see id. ¶ 12).  Resetarits states that he was the sole individual who could bind RCC to terms of a Master Subcontract (id. ¶ 10).  E&N never stated to Resetarits that E&N rejected the Master Subcontract (id. ¶ 13).  Had E&N communicated to Resetarits that there was no agreement to a Master Subcontract, "RCC would have not agreed to a Work Order with E&N" (id. ¶ 14; see id. ¶ 16 (if E&N had communicated, there would not have been a Work Order until the terms of the Subcontract were finalized).  If a subcontractor like E&N disagrees with the Master Subcontract, Resetarits would consider the requested modifications and "take them into account when negotiating other provisions of the Master Subcontract and/or Work Order, including contract price" (id. ¶ 18; see id. ¶ 20) as was done with the terms of the Work Order here (id. ¶ 19, Ex. 1, Work Order with initialed changes).  RCC would not have agreed to the Work Order if E&N rejected the Master Subcontract (id. ¶ 21) and not agreed to have its relationship with E&N be solely governed by the Work Order (id. ¶ 22).

"When RCC agreed to the terms of the Work Order, it did so without having received any indication that Defendant E&N was rejecting or objecting to the Master Subcontract" (id. ¶ 23).  RCC mailed the Master Subcontract to E&N and emailed to ask E&N to execute it (id. ¶ 25) but E&N never responded to the email or state it was rejecting the Master Subcontract (id. ¶ 26).

Responses to Defendants' Motion to Dismiss[3] were due by October 15, 2019, and any reply by October 22, 2019 (Docket No. 4).  Plaintiff's Cross-Motion serves as its response to Defendants' Motion to Dismiss (Docket No. 5).  Defendants duly replied (Docket No. 7).  This Court did not schedule briefing on the Cross-Motion, but Defendants responded in their Reply (id.), Plaintiff replied (Docket No. 8), and supplemented that reply (Docket No. 11; see Docket Nos. 9, 10).  The Motions then were deemed submitted without oral argument.

### III.    Discussion

This Court will consider first Defendants' Motion to Dismiss claims against Elio Ferreira (Docket No. 3) whether Plaintiff asserted personal jurisdiction over Ferreira.  Next, this Court will address Plaintiff's Cross-Motion to Remand (Docket No. 5), the applicability of the forum selection clause in the Master Subcontract and its impact on the remand of this action.  Next, this Court will consider (if necessary) Defendants' Motion to

---

[3]In support of their Motion to Dismiss, Defendants submit the Declaration of Elio Ferreira and Memorandum of Law, Docket No. 3.  In response, Plaintiff submits its Cross-Motion, Docket No. 5, consisting of the first Declaration of David Resetarits (Plaintiff's president and owner) with exhibits; Plaintiff's Memorandum of Law, with exhibits; and proposed state court Amended Complaint (with its exhibits). Defendants submits in reply their Reply Memorandum and the Declaration of Shawn Roney (a manager in E&N Construction), Docket No. 7.  In its reply in support of the Cross-Motion (and further opposition to Defendants' motion), Plaintiff submits a Reply Memorandum, the Second Declaration of Resetarits with exhibit (E&N's Work Order), Docket No. 8.

Plaintiff then moved to amend its reply Docket No. 9.  This Court so ordered that motion, Docket No. 10, and Plaintiff filed the Declaration of Thomas Vitiello, Docket No. 11.

Dismiss E&N on personal jurisdiction grounds (Docket No. 3).  Then, if needed this Court will consider Plaintiff's alternative motions for limited discovery and for leave to amend the (state) Complaint (Docket No. 5).

### A.  Applicable Standards

#### 1.  Motion to Dismiss

Defendants have moved to dismiss on the grounds that the Complaint fails to state a claim for which relief can be granted (Docket No. 17).   Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court later held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' <u>Id.</u>, at 557 . . . (brackets omitted)."

<u>Iqbal</u>, <u>supra</u>, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion addresses to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  <u>Goldman v. Belden</u>, 754 F.2d 1059 (2d Cir. 1985).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  <u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  <u>New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions</u>, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

2.  Forum Selection Clause

"Generally, a forum-selection clause will not bar litigation in a federal forum in the absence of further language indicating the parties' intent to establish exclusive jurisdiction in state court," <u>Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.</u>, No. 04 Civ. 4991RJH, 2004 WL 2360033, at *6 (S.D.N.Y. Oct. 19, 2004); <u>see John Boutari and Son Wine and Spirits, S.A. v. Attiki Importers and Distributors Incorp.</u>, 22 F.3d 51, 52-53 (2d Cir. 1994).  Waiver of statutory right to remove a case to federal court must be clear and unequivocal, <u>e.g.</u>, <u>Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.</u>, 838 F.2d 656, 659 (2d Cir. 1988); <u>Phoenix Global Ventures</u>, <u>supra</u>, 2004 WL 2360033, at *6.

In Phoenix Global Ventures, the forum selection clause stated that "any proceedings shall be initiated in the courts of the State of New York, New York County," 2004 WL 2360033, at *6, and the court held that this clause "clearly establishes exclusive jurisdiction in New York state courts," id.; see Eklecco L.L.C. v. Rainforest Café, Inc., No. 09-CV-0182, 2002 WL 1428924, at *2 (N.D.N.Y. June 12, 2002) (clause held plainly provides jurisdiction and venue limited to New York Supreme Court, Onondaga County). The Phoenix Global Ventures court then noted that a clause containing "the words 'consent' and 'submit to the full and complete jurisdiction of those courts' are insufficient to establish exclusive jurisdiction," Phoenix Global Ventures, supra, 2004 WL 2360033, at *6 n.6, citing John Boutari and Son, supra, 22 F.3d at 53.

In John Boutari and Son, the forum selection clause there stated that any disputes "come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts," 22 F.3d at 52. The Second Circuit held that this clause lacked any "'further language indicating the parties' intent to make jurisdiction exclusive,'" id. at 52 (quoting Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989)), 53. The court declared that "the choice of forum must be mandatory rather than permissive," id. at 53, holding that this clause did not deprive the district court of jurisdiction, id.

Courts in this Circuit require an "explicit language evidencing waiver" of removal "or 'where the forum selection clause identifies a particular court in which disputes will be heard,'" Rabbi Jacob Joseph School v. Province of Mendoza, 342 F. Supp.2d 124, 128 (E.D.N.Y. 2004) (quoting Unity Creations, Inc. v. Trafcon Indus., Inc., 137 F. Supp. 2d 108, 110 (E.D.N.Y. 2001)). In Rabbi Jacob Joseph School, the forum selection clause did not make a clear and unequivocal waiver of the right to remove, id., where that clause

9

had defendant "irrevocably submit[] to the non-exclusive jurisdiction of any New York State or United States federal court sitting in The City of New York," as well as Argentine appellate courts, id. at 125, 125-26.

### 3.  Remand and Removal

Any civil action brought in state court where this Court would have original jurisdiction may be removed by a defendant or defendants to this Court where the action is pending, 28 U.S.C. § 1441(a).  "A party seeking removal bears the burden of showing that federal jurisdiction is proper.  A civil claim filed in state court can only be removed to federal court if the district court would have had original jurisdiction to hear the claim," Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011) (citations omitted).  This Court once observed that "out of respect for states' rights and in keeping with the limited jurisdiction of federal courts, removal jurisdiction is 'strictly construed,' with all doubts resolved against removal," Flood v. CSX Transp., Inc., No. 11CV162, 2012 WL 464189, at *1 (W.D.N.Y. Feb. 13, 2012) (Skretny, C.J.) (citing Syngenta Corp Prot., Inc. v. Henson, 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002)); see, e.g., Whitaker v. American Telecasting, Inc., 261 F.3d 196, 201 (2d Cir. 2001) (citations omitted), and all doubts are resolved in favor of remand, Borden v. Blue Cross & Blue Shield of W.N.Y., 418 F. Supp. 2d 266, 271 (W.D.N.Y. 2006) (Skretny, J.) (citations omitted).

> "'Where ... jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper.'  United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir.1994).  See Flood v. CSX Transportation, Inc., 2012 WL 464189, *5 (W.D.N.Y.2012) (Skretny, J.) ('When a party files a motion to remand challenging the removal of an action from state court, the burden falls squarely upon the removing party to establish its right to a federal forum by

competent proof').  '[I]f subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings.'  <u>Romano v. Kazacos</u>, 609 F.3d 512, 520 (2d Cir.2010)."

<u>Badilla v. National Air Cargo, Inc.</u>, No. 12CV1066, 2013 WL 5723324, at *2 (Oct. 21, 2013).

After removal, this Court may issue "all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise," 28 U.S.C. § 1447(a).  An amendment of removed pleading will not be permitted to oust this Court of its subject matter jurisdiction, 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 3738, at 739-40 (Jurisd. 2018).

Section 1447(c) provides the timing for a plaintiff's motion for remand, for any defect other than subject matter jurisdiction must be raised within 30 days after filing of the notice of removal, 28 U.S.C. § 1447(c).

"Whether an action should be remanded to state court must be resolved by the district court with reference to the complaint, the notice of removal, and the state-court record at the time the notice of removal was filed," 14C <u>Federal Practice and Procedure</u> § 3739, at 758.  This Court considers facts disclosed in the record of the case as a whole in determining the propriety of removal, 14C <u>Federal Practice and Procedure</u> § 3734, at 719.  This differs from the materials considered for a Motion to Dismiss, which focuses on the face of the pleading and any documents incorporated by reference thereto.

4.  Personal Jurisdiction

"[I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry.  First, it must determine whether the plaintiff has shown

that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process," Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996); Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990).  Courts first determine whether jurisdiction lies pursuant to New York law (primarily CPLR and its long-arm statute) and whether jurisdiction constitutionally comports with federal due process, see Savin, supra, 898 F.2d at 306.  Allegany Capital Enterps., LLC v. Cox, No. 19CV160, 2021 WL 534803, at *9 (W.D.N.Y. Feb. 12, 2021) (Skretny, J.).

As for amenability for service, "this Court sits in diversity jurisdiction in the state of New York, so it exercises personal jurisdiction over the parties in accordance with the laws of New York," Hume v. Lines, No. 12CV6378, 2016 WL 1031320, at *10 (W.D.N.Y. Mar. 8, 2016) (Geraci, C.J.) (citing DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001)); see Braman v. Mary Hitchcock Mem. Hosp., 631 F.2d 6, 7 (2d Cir. 1980) (Docket No. 5, Pl. Memo. at 11).

The exercise of personal jurisdiction also must comport with the requirements of constitutional due process, Hume, supra, 2016 WL 1031320, at *10; Allegany Capital Enterps., supra, 2021 WL 534803, at *9.  Due process requires a defendant have minimum contacts with the forum, here New York, International Shoe Co. v. State of Wash., 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).  "The minimum contacts test asks whether a defendant has engaged in 'purposeful availment'—i.e., whether the contacts indicate the defendant's intent to invoke the benefits and privileges of New York law," Ge Dandong v. Pinnacle Performance Ltd., 966 F. Supp.2d 374, 384 (S.D.N.Y. 2013) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471, 105 S.Ct. 2174, 85

L.Ed.2d 528 (1985)).  The strength of these contacts is viewed from their totality, Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).  These minimum contacts may either be specific, arising from a defendant's actions leading to the lawsuit, or general, from a defendant's transactions in the forum, see, e.g., Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 127 (2d Cir. 2008).  Allegany Capital Enterps., supra, 2021 WL 534803, at *9.

Specific jurisdiction is governed by New York CPLR 302, this Court may exercise jurisdiction over a non-domiciliary defendant who transacts any business within New York or "contracts anywhere to supply goods or services in the state," N.Y. CPLR 302(a)(1) (see Docket No. 3, Defs. Memo. at 7-8).  Other provisions for statutory long-arm jurisdiction apply to tortious actions committed within the state, CPLR 302(a)(2), or committed a tortious act outside of New York causing injury to persons or property within the state, CPLR 302(a)(3).

### 5.  Plaintiff's Alternative Relief

#### a.  Leave to Amend Complaint

Under Federal Rule of Civil Procedure 15(a) amendment of pleadings after the time to do so as of right requires either consent of all parties (apparently not present here) or by leave of the Court.  Under Rule 15(a) motions for leave to amend the complaint are to be freely given when justice requires.  Granting such leave is within the sound discretion of the Court.  Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).  "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'"   Foman, supra, 371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)).

An amendment is usually of pleadings in this Court.  The Orders issued under § 1447(a) are those for this Court rather than for the state court where this case was removed.

b.  Limited Jurisdictional Discovery

Generally, a party may not seek discovery from any source before the parties meet and confer pursuant to Rules 16 and 26(f), Fed. R. Civ. P. 26(f)(1), 16(b); W.D.N.Y. Loc. Civ. R. 16(b)(2), 26(a), leading to a Scheduling Conference, Fed. R. Civ. P. 26(d)(1), unless such discovery is authorized by this Court's Local Civil Rules (which they do not), by stipulation (again, not present here), or by Court Order, Fed. R. Civ. P. 26(d)(1); cf. Fed. R. Civ. P. 27(a) (before action discovery).

This Court, however, has the discretion to order limited discovery to resolve jurisdictional questions in a Motion to Dismiss.  Where "'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary', jurisdictional discovery should be granted.   Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC, 2006 WL 708470, *6 (S.D.N.Y.2006)," Badilla, supra, 2013 WL 5723324, at *11 (Docket No. 5, Pl. Memo. at 14-15).   In granting limited jurisdictional discovery, Judge Elizabeth Wolford noted that

> "'It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order

14

discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record.' <u>Leon v. Shmukler</u>, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014).  In this Circuit, jurisdictional discovery is permitted where a plaintiff has 'made a sufficient start toward establishing personal jurisdiction,' such that it appears there may be a colorable jurisdictional claim.  <u>Hollins v. U.S. Tennis Ass'n</u>, 469 F. Supp. 2d 67, 70 (E.D.N.Y. 2006) (quotation omitted).

<u>Miami Products & Chem. Co. v. Olin Corp.</u>, 449 F. Supp.3d 136, 187 (W.D.N.Y. 2020). This limited discovery is allowed where it would aid this Court in deciding whether it has the power to adjudicate the case, <u>see</u> <u>Buffalo Bills, LLC v. Caccamo</u>, No. 20CV23, 2020 WL 7872012, at *1 (Oct. 15, 2020) (Vilardo, J.).

B.  Parties' Contentions

Briefly, Defendants argue that RCC lacks personal jurisdiction over them in New York (Docket No. 3, Defs. Memo. at 4-11).  Ferreira states he lacks any connection with New York and did not sign any agreement with RCC (Docket No. 3, Ferreira Decl.; Docket No. 3, Defs. Memo. at 13-15).  Defendants also argue that New York is a convenient forum for litigating this dispute from a New Jersey construction project (Docket No. 3, Defs. Memo. at 11-13).

RCC counters that New York has personal jurisdiction over Defendants (E&N specifically) from the Master Subcontract's forum selection clause (Docket No. 5, Pl. Memo. at 5-10), despite that contract not being signed (<u>id.</u> at 5-6; Docket No. 8, Pl. Reply Memo. at 4).  From E&N's performance of the Work Order, RCC concludes E&N accepted the terms of the unsigned Master Subcontract (Docket No. 5, Pl. Memo. at 10-11). Alternatively, E&N as a registered foreign corporation consented to personal jurisdiction in New York from its registration (<u>id.</u> at 11-12).  RCC also alternatively seeks leave to

amend the state Complaint (id. at 18, Ex. D) and for limited jurisdictional discovery about where the Master Subcontract sent for execution was (id. at 14-15, Exs. B, C).

### C.  Motion to Dismiss Elio Ferreira (Docket No. 3)

First, as for the Motion to Dismiss Elio Ferreira, Ferreira is a shareholder and vice president of E&N (Docket No. 3, Ferreira Decl. ¶ 1), stating that he is a New Jersey resident (id. ¶ 6).  He denies being a party to the Master Subcontract (id. ¶¶ 7-8).  RCC argues that dismissal against Ferreira should be without prejudice for Ferreira to have the opportunity to consent to New York State jurisdiction or allow Plaintiff to sue Ferreira in the United States District Court for the District of New Jersey (Docket No. 5, Pl. Memo. at 15-16).

Defendants' Motion to Dismiss Ferreira (Docket No. 3) is granted under Rule 12(b)(2) for lack of personal jurisdiction over E&N.  This Court declines to rule on whether Plaintiff RCC states a claim against Ferreira or his forum non conveniens argument.  RCC's proposed state Amended Complaint only alleges claims against E&N (Docket No. 5, Pl. Memo. Ex. D, [proposed] Am. Compl.).  RCC thus understands that it currently lacks personal jurisdiction over Ferreira.

### D.  Cross-Motion to Remand

#### 1.  Unsigned Contract and its Forum Selection Clause

The reason this case is in New York courts is the forum selection clause of the Master Subcontract.  Again, Article 20.4 of the Master Subcontract (Docket No. 5, Resetarits [First] Decl. Ex. 1, art. 20.4) provides that "Any such action and all actions by either party hereto, shall be venued and heard exclusively in Supreme Court, Erie County,

New York." This text stresses exclusive jurisdiction in the New York State Supreme Court, Erie County, but it does not explicitly waive E&N's removal to federal court.

E&N has not signed the Master Subcontract, vehemently disagreeing with it. The only signed agreement between these parties is the Work Order (e.g., Docket No. 5, Resetarits [First] Decl. Ex. 3), which has no reference to the Master Subcontract, its forum selection clause, or the other provisions RCC claims E&N violated. While the Master Subcontract calls for its incorporation into the Work Order (see Docket No. 5, Resetarits [First] Decl. Ex. 1, at 1, Whereas Cl., art. 2.2), the signed Work Order here is silent as to that incorporation.

The issue, then, is the effect of the unsigned Master Subcontract on forum selection and (as RCC argues) personal jurisdiction over Defendants. RCC argues that "by their very terms" both the Work Order and the Master Subcontract provide incorporation of the Master Subcontract into the Work Order (Docket No. 5, Resetarits [First] Decl. ¶ 14). The Work Order, however, lacks such express incorporation.

In a Summary Order, Kimm v. Kyu Sung Cho, 706 F. App'x 1, 2 n.1 (2d Cir. 2017) (see Docket No. 5, Pl. Memo. at 6), the Second Circuit recognized that New York and New Jersey laws are similar for the enforceability of unsigned contracts. "Although unsigned, the Agreement at issue may be enforceable where objective evidence establishes the parties' agreement to, and intent to be bound by, its terms," id. at 2 (citing, e.g., Flores v. Lower E. Side Serv. Ctr., Inc., 4 N.Y.3d 363, 368-69, 795 N.Y.S.2d 491, 495-96 (2005); Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280, 284 (1992) (defendant held to have binding agreement with plaintiff by defendant taking the benefit of services with a reasonable opportunity to reject them)) (Docket No. 8, Pl. Reply

Memo. at 4).   The Second Circuit accepted the partial performance of the unsigned contract by one party that is accepted by the other party as satisfying the requirement of evidencing the parties' agreement to be bound by the terms of the unsigned contract, 706 F. App'x at 2; R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 75-76 (2d Cir. 1984) ("major significance is whether one party has partially performed, and that performance has been accepted by the party disclaiming the contract").

In Kimm, the contract was a retainer agreement between an attorney and client, Kimm, supra, 706 F. App'x at 2.  Defendant Cho was sued and solicited Kimm to represent him.  Kimm sent Cho a retainer agreement in which Kimm agreed to represent Cho for a monthly retainer of $3,000 and a rolling monthly payment of $10,000 to be applied against litigation fees.  Kimm appeared for Cho in federal court and Cho paid Kim $133,000.  Id. at 3.  The Second Circuit agreed with the district court and concluded that "such conduct manifests the parties' consent to the Agreement and their intent to be bound by its terms," id.  Cho, however, disputed the terms of that Agreement and whether he was obliged to pay larger amounts, id.  The Second Circuit concluded that "Kimm's partial performance under the Agreement and Cho's acceptance of that performance demonstrates the parties' acceptance of the Agreement and intent to be bound by its terms," id., binding Cho to the unsigned retainer agreement, id.

The New York precedent cited by the Second Circuit Kimm panel, Flores, discussed the "long held" view that "a contract may be valid even if it is not signed by the party to be charged, provided its subject matter does not implicate a statute—such as the statute of frauds (General Obligations Law § 5-701)—that imposes such a requirement," 4 N.Y.3d at 368, 795 N.Y.S.2d at 494.  There, the court considered whether the State

Legislature required written indemnification agreements under Workers' Compensation Law § 11.  The <u>Flores</u> Court discussed favorably <u>Brown Brothers Electrical Contractors v. Beam Construction Corp.</u>, 41 N.Y.2d 397, 393 N.Y.S.2d 350 (1977), a case factually analogous to the case before this Court.

In <u>Brown Brothers</u>, a general contractor failed to pay Brown Brothers, its subcontractor.  The owner of the property then asked Brown Brothers to complete its work.  After doing so, Brown Brothers sought payment from the owner; the owner declined, arguing that it did not enter into a contract with Brown Brothers.  After trial, the trial court found that there was an enforceable contract between the owner and Brown Brothers.  The Court of Appeals agreed, holding that "the course of conduct between [the owner] and Brown, including their writings . . . was sufficient to spell out a binding contract," <u>Brown Bros.</u>, <u>supra</u>, 41 N.Y.2d at 399, 393 N.Y.S.2d at 399; <u>Flores</u>, <u>supra</u>, 4 N.Y.3d at 368, 795 N.Y.S.2d at 494.  The lack of an integrated agreement did not end the inquiry, with the Court of Appeals looking to "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds," <u>Brown Bros.</u>, <u>supra</u>, 41 N.Y.2d at 399-400, 393 N.Y.S.2d at 352; <u>Flores</u>, <u>supra</u>, 4 N.Y.3d at 368, 795 N.Y.S.2d at 494.  The <u>Brown Brothers</u> Court noted that "emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain," <u>Brown Bros.</u>, <u>supra</u>, 41 N.Y.2d at 400, 393 N.Y.S.2d at 352.

Applying <u>Kimm</u> and the state precedents cited therein and <u>Brown Brothers</u>, the evidence here is disputed whether the parties agreed to the terms of the Master Subcontract, especially the forum selection clause.  Shawn Roney for E&N asserts that

he negotiated the Master Subcontract with Tom Vitiello and an unnamed representative of Plaintiff, rejecting its terms.  E&N then declined to return the document for execution. Roney contends that (through Vitiello and the unnamed representative) Plaintiff agreed only to be bound by the Work Order and acknowledged E&N's rejection of the forum selection clause (at a minimum, if not the entire Master Subcontract).

RCC through its president and owner refute that Vitiello represented RCC, that RCC would agree to work based upon the Work Order only, or that RCC was aware of E&N's rejection of the Master Subcontract.

The partial performance by E&N here is on the terms of the Work Order, which is only a subset of the performance under the Master Subcontract (see Docket No. 5, Resetarits [First] Decl. Ex. 1, art. 2.2).  The Master Subcontract sets forth obligations in performance that is not reflected in the Work Order, which specifies the tasks to be performed on the project.  E&N's performance of the Work Order terms does not constitute acceptance of the terms of the Master Subcontract.  Article 2.2 of the Master Subcontract reads that, upon acceptance of a Work Order, "a subcontract for that portion of the work shall exist between Resetarits and the Subcontractor for such Project, and containing al of the terms and conditions of this Master Subcontract and provision of the Work Order" (id.).  In effect, this creates a subcontract for the particular Work Order.  But the subcontractor on the Work Order without the Master Subcontract as here would not know the additional terms and conditions of this subcontract from the Work Order.

RCC's usual practice was to have its subcontractors agree to both the Master Subcontract and the Work Order, thus binding the subcontractor to the terms of the Master Subcontract as it performed the Work Order (or the Article 2.2 subcontract formed

from that Work Order).  That did not happen here.  E&N rejected the Master Subcontract (but inadequately communicated that decision) and performed the Work Order.  Absent the executed Master Subcontract, RCC still allowed E&N to perform the Work Order. While there was an enforceable agreement under the Work Order, there is none under the Master Subcontract.  RCC has not alleged a breach of the terms of the Work Order; all the alleged breaches are of terms under the Master Subcontract for bonding, insurance, proper billing, and payment by E&N.

Therefore, from the totality of circumstances, see Brown Bros., supra, 41 N.Y.2d at 400, 393 N.Y.S.2d at 352, this Court does not give effect to this unsigned Master Subcontract, including forum selection clause.  E&N's performance under a separate agreement does not manifest its acceptance of the terms of the unsigned Master Subcontract.

### 2.  Remand

The usual grounds for remand consider the timeliness of the removal, the timing of the motion to remand, whether removal procedures were followed, and the federal subject matter jurisdictional basis for that removal.  Defendants established the basis for removal—diversity jurisdiction for the contract dispute in excess of $75,000 (see Docket No. 1, Notice of Removal).  RCC does not challenge the allegations of the diversity of the parties and the meeting of the amount in controversy requirement for diversity jurisdiction or the timing of the removal.

RCC, in turn, timely sought remand, see 28 U.S.C. § 1447(c), cross moving for remand on October 15, 2019 (Docket No. 5), within 30 days of the Notice of Removal of September 17, 2019 (Docket No. 1).  RCC is not objecting to the method Defendants

used in removing this action or arguing other objections to federal jurisdiction for removal. This Court, therefore, has subject matter jurisdiction over this removed case.

RCC's contention is that Defendants (particularly E&N) consented to jurisdiction in New York State Supreme Court, hence justifying removal thereto.  Again, the only basis for that alleged consent to New York State court jurisdiction is the forum selection clause of the unexecuted Master Subcontract.  There is no stipulation by the parties to remand this action, <u>cf.</u>, <u>e.g.</u>, <u>Paul Reid. LLP v. U.S. Fire Ins. Co.</u>, No. 05-C-280-C, 2005 WL 1806429, at *1 (W.D. Wis. Aug. 1, 2005).  Despite the intention expressed within the Master Subcontract (Docket No. 5, Resetarits [First] Decl., Ex. 1, art. 2.2) to incorporate the Work Order into the Master Subcontract (as well as RCC's usual practice to have its subcontractors agree to both documents) E&N here did not agree to or sign the Master Subcontract.  As held above, there is no evidence of E&N agreeing to the Master Subcontract based solely upon its performance of the Work Order, a separate agreement.

This Court also considers this Circuit's requirement that the waiver of the statutory right to removal has to be in explicit language evidencing that waiver, <u>Rabbi Jacob Joseph School</u>, <u>supra</u>, 342 F. Supp. 2d at 128.  While the unsigned Master Subcontract contains explicit language evidencing an intention to litigate exclusively in the New York State Supreme Court, Erie County, there is no evidence of E&N's agreement to that term.  The only signed agreement, the Work Order, does not manifest this explicit language.  Without that agreement, there is no evidence of explicit waiver of the right to remove to this Court.

Therefore, RCC's Motion for Remand (Docket No. 5) is denied.

E.  Personal Jurisdiction Over Defendant E&N Construction

RCC contends that E&N consented to New York State jurisdiction by agreeing to the forum selection clause (Docket No. 5, Pl. Memo. at 10-11) and because E&N is registered as a licensed foreign business in New York (id. at 11, citing N.Y. Bus. Corp. Law § 304).  Again, E&N denies agreeing to the Master Subcontract or its forum selection clause (see generally Docket No. 8, Roney Decl.).

Discussing first the licensing of a foreign business, § 304 of the New York Business Corporation Law authorizes designating the New York State Secretary of State as agent for service, N.Y. Bus. Corp. Law § 304.  This is not a waiver of personal jurisdiction for actions commenced against that foreign corporation in this state, see Aybar v. Aybar, 169 A.D.3d 137, 147, 93 N.Y.S.3d 159, 166 (2d Dep't 2019), leave to appeal dismissed, 33 N.Y.3d 1044, 103 N.Y.S.3d 17 (2019) (Docket No. 7, Defs. Reply Memo. at 10-11); Malczuk v. Michaels Org., 70 Misc.3d 218, 220, 135 N.Y.S.3d 252, 255 (Sup. Ct. Queens County 2020).  "New York's business registration statutes do not expressly require consent to general jurisdiction as a cost of doing business in New York, nor do they expressly notify a foreign corporation that registering to do business here has such an effect," Aybar, supra, 169 A.D.3d at 147, 93 N.Y.S.3d at 166.  That designation by a foreign corporation of the Secretary of State as agent for service is required for a foreign corporation and is not a consent for later suit in this State, Malczuk, supra, 70 Misc.3d at 220-21, 135 N.Y.S.3d at 255-56.

The Second Department in Aybar considered the issue after the United States Supreme Court's decision in Daimier AG v. Bauman, 571 U.S. 117, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014); Aybar, supra, 169 A.D.3d at 139, 93 N.Y.S.3d at 160.  The

Second Department thus rejected <u>Bagdon v. Philadelphia & Reading Coal & Iron Co.</u>, 217 N.Y. 432, 436-37, 111 N.E. 1075 (1916), as good precedent in favor of the contemporary view of the law post-<u>Daimler</u>, <u>Aybar</u>, <u>supra</u>, 169 A.D.3d at 147-52, 93 N.Y.S.3d at 166-70; <u>see</u> <u>Wilderness, U.S.A., Inc. v. DeAngelo Bros. LLC</u>, 265 F. Supp.3d 301, 309 (W.D.N.Y. 2017) (Wolford, J.) ("There is no denying that <u>Daimler</u> affected a substantial change of law relating to the doctrine of general jurisdiction").

Plaintiff relies upon the New York Court of Appeals decision in <u>Bagdon</u> remaining good state law (Docket No. 8, Pl. Reply Memo. at 8-9; <u>see</u> Docket No. 5, Pl. Memo. at 11). After these parties briefed their motions, the Second Circuit decided <u>Chufen Chen v. Dunkin' Brands, Inc.</u>, 954 F.3d 492, 496 (2d Cir. 2020). There, the court presumed that the New York State Court of Appeals now would conclude that a company did not consent to general personal jurisdiction in New York by merely registering to do business and designating an agent for service of process in New York, citing favorably <u>Aybar</u>, <u>Chufen Chen</u>, <u>supra</u>, 954 F.3d at 496.

This Court agrees with the Second Circuit in <u>Chufen Chen</u> and the Second Department in <u>Aybar</u> that the better and more current view of New York law under Business Corporation Law is that a foreign corporation registering in New York does not automatically consent to personal jurisdiction in this state merely by registering. Thus, E&N registering as a foreign corporation designating an agent for service in New York did only that and did not expose E&N to personal jurisdiction in this state. Mere ability to be served in this state does not establish personal jurisdiction over E&N in New York.

On this ground rejecting agency for service as establishing personal jurisdiction over the foreign corporation, Defendants' Motion to Dismiss (Docket No. 3), is granted.

This Court, thus, need not address the constitutional, due process grounds for exercising personal jurisdiction over E&N.

As for the forum selection clause as the basis for personal jurisdiction, Plaintiff alleges a breach of contract and not a tort (Docket No. 1, Notice of Removal, Ex. 1, Compl. ¶¶ 6-10; see Docket No. 3, Defs. Memo. at 9); a tort claim would have broader extraterritorial effect for personal jurisdiction than a contract claim, cf. N.Y. CPLR 302(a)(3) (committing tort without New York that cause injury to person within the state).  CPLR 302(a)(1) extends New York State personal jurisdiction to the transaction of business in New York or for contracts anywhere to supply goods and services in New York.  Section 302(a)(1) applies to contracts executed in New York.

But this Master Subcontract was for services in New Jersey, not in New York. Absent consent, there is no personal jurisdiction of New York courts (including this Court) over E&N.   The project is not transacting business in New York (again, it was for construction of apartment buildings in New Jersey).   RCC does not allege transacting business in New York (for example, in the negotiation of the Master Subcontract or the Work Order).  Plaintiff sent the contract to E&N in New Jersey to execute the Master Subcontract.  As found above that the Master Subcontract did not bind E&N, there is no evidence of E&N consenting to proceed in New York.

In sum, Defendants' Motion to Dismiss (Docket No. 3) on the grounds of lack of personal jurisdiction over E&N is granted.   With this conclusion, this Court need not address the arguments whether New York was an inconvenient forum for this dispute.

For a complete record, this Court next addresses Plaintiff's alternative motions for procedural relief short of remanding this case.

F.   Jurisdictional Discovery

RCC alternatively seeks discovery about the fate of the unsigned Master Subcontract (Docket No. 5, Pl. Memo. at 14-15).  RCC claims that it established a <u>prima facie</u> case for personal jurisdiction to justify jurisdictional discovery about the forum selection clause (<u>id.</u> at 15).

RCC poses jurisdictional discovery in Interrogatories and document demands (<u>id.</u>, Pl. Memo. Exs. B, C).  The proposed Interrogatories would ask if E&N received and signed the Master Subcontract (<u>id.</u>, Ex. B).  They also would ask if E&N agreed to the Master Subcontract and the Work Order (<u>id.</u>).  Other Interrogatories would ask if E&N remains registered as a foreign corporation in New York and whether E&N contacted RCC in New York (<u>id.</u>).  RCC then would seek documents of contracts between RCC and E&N (<u>id.</u>, Ex. C).  This discovery is before the parties Rule 16 conference and a Scheduling Order.

As held above, however, RCC has not established a <u>prima facie</u> case for personal jurisdiction over E&N.  Jurisdiction here rises and falls with the forum selection clause in an unsigned contract that E&N vehemently disagreed with and no effort to establish E&N's actions showed its adoption.  RCC's proposed limited discovery about what happened to the Master Subcontract will not illuminate this issue.  RCC fails to establish the existence of a binding agreement between the parties as to this forum selection clause.

RCC's initial mystery of what happened to the Master Subcontract it circulated for signature (the questions posed in the proposed discovery) is resolved by Roney's declaration (Docket No. 7).  Roney acknowledged receipt of the Master Subcontract by

E&N but, due to disagreement with its terms, E&N did not sign and return it (Docket No. 7, Roney Decl. ¶¶ 9, 12, 14).  This Court, therefore, declines to exercise its discretion to order RCC's proposed limited jurisdictional discovery.

G.  Leave to Amend the State Complaint

Finally, RCC alternatively moves for leave to amend the Complaint if its motion to remand is denied (Docket No. 5, Pl. Memo. at 18).  The amendment would eliminate Ferreira as a Defendant and would describe the Work Order and its relationship with the unsigned Master Subcontract (id., Pl. Memo. Ex. D), proposing to allege the Work Order and article 20.1 of the Master Subcontract declaring that E&N consents to jurisdiction in New York (id.).

RCC submits as its proposed Amended Complaint an amended state court pleading (id.), assuming amendment in the New York Supreme Court rather than this Court.  This Court does not take a position whether leave to amend should be granted by New York State Supreme Court.  Since this alternative presumes denial of remand, this proposed amendment is not in an acceptable form.  While 28 U.S.C. § 1447 authorizes this Court to issue "all necessary orders," § 1447(a), those Orders do not include granting leave to amend pleadings for another court.  As such the proposed amendment of the State Complaint also would attempt to oust this Court's jurisdiction.

Ignoring the caption and assuming the proposed amendment is addressed to this Court, the amendment does not address personal jurisdiction over E&N, save allegations of E&N's execution of the Work Order and the Master Subcontract incorporating the Work Order (Docket No. 5, Pl. Memo. Ex. D, proposed Am. Compl. [new] ¶¶ 6-7; see Docket No. 8, Pl. Memo. Ex. 1).  Plaintiff, however, has not addressed the lack of personal

jurisdiction from the Work Order (the sole agreement between RCC and E&N).  Until RCC establishes that New York courts (including this Court) have personal jurisdiction over E&N, amendment of the complaint against E&N in a New York court would be futile.

Since Defendants' Motion to Dismiss (Docket No. 3) is granted, leave to amend the (state) Complaint (Docket No. 5) is denied.

## IV.    Conclusion

RCC's basis for personal jurisdiction over Defendants in this case (if not jurisdiction in this Court) and removal to New York State Supreme Court is a forum selection clause in a contract not signed by either party.  Defendant E&N's performance is under the related Work Order, which E&N deemed the only agreement between the parties, and not necessarily for the unsigned Master Subcontract.  E&N contended it rejected the Master Subcontract, even if E&N's position was not conveyed to RCC.  Absent a signed contract or evidence of meeting of the minds of the parties as to the terms of the Master Subcontract, there was no basis for E&N consenting to personal jurisdiction in New York, agreement to the forum selection clause, or explicit waiver of its statutory right to remove this case to this Court.  Thus, Plaintiff RCC's Cross-Motion to remand (Docket No. 5), based on E&N purported consent, is denied.

As for Defendants' Motion to Dismiss (Docket No. 3), there is no personal jurisdiction in New York over either Defendant Ferreira or E&N.  Ferreira is a New Jersey resident who has no connection to New York.  RCC is willing to amend its Complaint to eliminate Ferreira as a Defendant (unless Ferreira consents to personal jurisdiction in New York).  Personal jurisdiction over E&N in New York also fails for reasons stated above.  There is no evidence to date showing E&N's agreement to the Master

Subcontract's forum selection clause or from performance of the Work Order (which also did not have a forum selection clause or refer to the Master Subcontract).  Thus, their Motion to Dismiss as to E&N (id.) is granted and this action is dismissed.

In light of this dismissal, Plaintiff's alternative motions (Docket No. 5) for leave to conduct limited jurisdictional discovery or the amend the state Complaint are denied.  This Court also does not address the <u>forum non conveniens</u> arguments about commencing this action in New York rather than in New Jersey.

### V.   Orders

IT HEREBY IS ORDERED, that Plaintiff's Cross-Motion for Remand (Docket No. 5) is DENIED.

FURTHER, Defendants' Motion to Dismiss claims against Defendant Ferreira (Docket No. 3) is GRANTED.

FURTHER, Defendants' Motion to Dismiss claims against Defendant E&N Construction, Inc. (id.) is GRANTED.

FURTHER, Plaintiff's Motion (Docket No. 5) for leave to conduct limited jurisdictional discovery is DENIED.

FURTHER, Plaintiff's Motion (id.) for leave to amend the state court Complaint is DENIED.

FURTHER, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:          April 29, 2021
                Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge